# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY BRITTO,<br>    Petitioner,<br><br>    v.<br><br>EDWARD FICCO,<br>    Respondent. | )<br>)<br>)<br>)   Civil Action No. 01cv11445-NG<br>)<br>)<br>)<br>) |

GERTNER, D.J.

## MEMORANDUM AND OPINION
### April 23, 2011

On February 2, 1996, a masked man entered Rose Delsie's ("Delsie") home and ordered her to hand over cash and other valuables at gunpoint. In the course of the robbery, Delsie took a gun from her night stand and shot at the gunman who returned fire and killed her. The gunman was not immediately apprehended. He was arrested when a later search of his home during an unrelated investigation turned up a weapon that, according to law enforcement, was the murder weapon. Jeffrey Britto ("Petitioner" or "Britto") was then indicted for Delsie's murder and subsequently convicted. He challenges that conviction under 28 U.S.C. § 2254.

## I.    PROCEDURAL BACKGROUND

Britto was initially indicted for unlawful possession of a firearm on April 8, 1996. The murder indictment followed three months later, on June 3, 1996, and was consolidated with the earlier firearm charge. Motions to suppress evidence and statements were filed and, after evidentiary hearings, were denied on August 15, 1997. From November of 1997 through May of 1998, Britto filed several motions to terminate his appointed counsel; counsel also filed a motion to withdraw from the case. All such motions were denied.

Finally, on May 14, 1998, Britto was convicted of murder in the first degree under a felony murder theory, armed robbery while masked, and unlawful possession of a firearm. He

was sentenced to life imprisonment, with concurrent sentences of ten to fifteen years for armed robbery while masked and two years in the House of Correction for the firearm offense. On March 30, 2001, the Supreme Judicial Court ("SJC") affirmed Britto's conviction of unlawful possession of a firearm and first-degree murder but vacated the armed robbery conviction as duplicative. Commonwealth v. Britto, 433 Mass. 596 (2001).

On May 21,1998, Britto filed his first motion for a new trial pro se, which was denied on June 24, 1998. On August 27,1999, Britto filed a second motion for a new trial with the assistance of an attorney. That motion was denied on November 24, 1999, and the defendant appealed. The appeal from the denial of the second motion for a new trial and the direct appeal were consolidated.

Britto filed a third motion for a new trial in September 2001 (shortly after the original conviction was affirmed). For unknown reasons, the third motion appears not to have been docketed until August 2003.[1] He filed an amended pro se third motion for a new trial on August 8, 2003, which was denied on October 28, 2003, and appealed again. The SJC denied the appeal on April 18, 2007.

In August 2001, Petitioner filed a writ of habeas corpus with this Court. Pet. Writ Habeas Corpus (document #1). The petition was stayed without prejudice until termination of the then pending third motion for a new trial. Order Administrative Stay (document #12). On August 15, 2007, the stay was lifted, when petitioner filed proof that all of the state proceedings had been terminated.

---

[1] Resp't Supplemental Answer 3 (document #32).

With the assistance of newly appointed counsel, Britto filed an amendment to his pro se habeas petition on July 15, 2008. Am. Pet. Writ Habeas Corpus (document #26). The Commonwealth replied, arguing that the amendment contained unexhausted claims. As such, the Commonwealth argued, the entire petition should therefore be dismissed or, in the alternative, the Petitioner should be given an opportunity to delete the unexhausted claims. The petitioner chose the latter, withdrawing his claims concerning alleged juror misconduct, the prosecutor's closing argument, and ineffective assistance of appellate counsel. Mot. Withdraw Issues (document #35).

## II.  FACTS

The Supreme Judicial Court's recitation of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).[3] See Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2000); Avellar v. DuBois, 30 F. Supp. 2d 76, 79 (D. Mass. 1998); Otsuki v. DuBois, 994 F. Supp. 48, 51 & n.3 (D. Mass. 1998); cf. Sumner v. Mata, 449 U.S. 539, 545-46 (1981) (holding that the presumption of correctness under former habeas statute applies to "factual determinations made by state courts, whether the court be a trial court or appellate court").

The facts at issue in the state court criminal proceedings may be summarized as follows:

> The victim, Rose Marie Delsie, lived in a first-floor apartment in Brockton. Beginning on February 21, 1996, and continuing through the morning of February 22, Delsie and her friend, Cynthia Holiday ("Holiday"), binged on cocaine and heroin in Delsie's apartment. Holiday left periodically to replenish their supply of drugs. At one point, on February 22, she left and returned with Robert Zine ("Zine"), who joined the women in smoking crack for the rest of the morning. Around noon that day, Holiday paged a regular drug contact, codefendant Howard Allen, and asked him to bring more drugs to Delsie's apartment.

Shortly after Allen arrived, the defendant entered the apartment while masked and demanded cash and other valuables at gunpoint. He said he had been watching the place for the past couple of weeks and knew there were "goods" there. Delsie took a gun from her night stand and shot him. The defendant returned fire. One projectile perforated Delsie's lung and several major blood vessels. She died as a result.

At trial, identity was the principal issue. Zine testified that, as he and Holiday approached Delsie's house, he saw a black man resembling the defendant in skin tone and height leaning against the house, but he could not make a positive identification. Zine had known the defendant for several years. Although the defendant's head and face were covered during the robbery, Zine recognized him by his eyes.

Robert Senter, Delsie's upstairs neighbor, heard gunshots at approximately noon on February 22. He looked out his front window and saw a black man wearing a hooded sweatshirt emerge from the house and look back into Delsie's apartment. The man was holding a gun similar to one Delsie had shown Senter in her apartment. Senter watched him approach a red van, later identified as Allen's, look inside, as if checking for keys, and then glance toward the building. Senter had a clear view of the man's face. At a lineup several months later, Senter said the defendant looked like a man that could be the gunman. The police officer who drove Senter home after the lineup asked if he was positive about the identification. Senter stated he was sure because he knew what it was "like to be locked up" and did not "want to identify someone who didn't do it." He identified the defendant at trial. The lineup procedure had been preserved on videotape and shown to the jury.

On the evening of February 22, the defendant and Allen went to an apartment where the defendant was staying with Willie Lee Harris and Harris's girl friend. (Howard Allen was convicted of being an accessory after the fact to murder and robbery following his joint trial with the defendant.) It appeared to Harris, who was in the apartment, that something was wrong with the defendant. The defendant went directly to his room, accompanied by Allen. Allen left, returned, then left again. Harris looked in the defendant's room and saw him lying on his side, apparently hurt. There were medical supplies on the table by the bed. The next day the defendant emerged from his room walking with difficulty. Harris asked him what happened. The defendant replied that he had been shot during an argument. A pathologist retained by the Commonwealth examined the defendant on April 1, 1996, and saw a hip wound consistent with a grazing gunshot that was approximately six weeks old.

>Approximately one month after the shooting the Brockton police entered the Harris apartment with a search warrant in an unrelated matter. The defendant was present, and he was holding the victim's gun. When he saw the police, he dropped the gun and said he was just visiting, adding that the gun was there when he arrived. Harris had seen the defendant with the gun several days after the shooting.

Britto, 433 Mass. at 598-99.

The petitioner raises five claims, the first three focused on the SJC's decision, namely that: 1) the SJC decision was contrary to Supreme Court law when it affirmed the trial court's refusal to appoint new counsel; 2) it was prejudicial error to admit hearsay statements of Robert Senter ("Senter"), the identification witness, made to the police, while being transported from the lineup; and 3) the judge committed error when he permitted the jurors to submit questions to the witnesses. The fourth claim focuses on the alleged ineffectiveness of trial counsel in the following respects: 1) failure to interview and present material witnesses; 2) failure to prepare and present evidence impeaching two crucial government witnesses, Zine and Holiday; 3) failure to maintain adequate client communication in preparing and presenting a defense; 4) failure to furnish the government with reciprocal discovery which then undermined counsel's ability to impeach the government witness; and 5) failure to obtain an independent medical examination.[2]

Newly-appointed counsel supplemented the petition with respect to alleged trial counsel errors, claiming that trial counsel also: 1) failed to have a forensic pathologist examine the petitioner; 2) failed to employ an expert witness on eyewitness identification; 3) failed to

---

[2] As noted above, all claims with respect to appellate counsel were withdrawn.

employ an expert on ballistics; 4) failed to pursue exculpatory evidence regarding guilt of another; and 5) failed to adequately expose the Commonwealth's witnesses biases.[3]

Respondent claims that certain of the supplemental claims were not exhausted, and as to the remaining ones, for federal habeas review the restrictive standard requires affirming the SJC's decisions.

## III. LAW

Britto's claims must be reviewed pursuant to the strict standards of 28 U.S.C. § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. While the writ of habeas corpus is supposed to stand as a safeguard against the imprisonment of those held in violation of the law, too often it is nothing more than a maze of formal rules of disqualification, a set of trip wires that has the effect of blocking any meaningful federal review.

Significantly, AEDPA bars relitigation of any claim adjudicated on the merits subject only to the exceptions in (d)(1) and (d)(2):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

---

[3] Two of the trial counsel claims were also withdrawn, namely the failure to challenge "a clearly biased juror," and failure to object to the prosecutor's closing argument.

In Williams v. Taylor, 529 U.S. 362 (2000), the Court gave independent meaning to the two distinct clauses of § 2254(d)(1) -- the so-called "contrary to" clause and the "unreasonable application" clause.  The Court described the operation of the statute as follows:  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  In other words, there are two scenarios justifying a federal court's grant of habeas relief pursuant to the "contrary to" clause: (1) where a state-court decision applies the "wrong" legal rule; or (2) where the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different than that reached by the Court (implicitly applying the "wrong" rule).  Id. at 1519-20.  If the state court identifies the correct governing legal principle from the Supreme Court's decisions, the habeas court must then evaluate the claim under the unreasonable application clause (i.e., whether the state court reasonably applied that legal principle to the facts of the prisoner's case).  Id. at 1523.

In effect, it is not enough for a federal court to find that the state court chose one of two equally plausible interpretations of federal law and that the habeas court would have chosen the other interpretation.  The state court must not just be wrong – but very, very wrong.  See Yarborough v. Alvarado, 541 U.S. 652, 664 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision.").

None of the issues decided by the SJC in this case involve the "wrong rule." Rather, the question is whether the state court reasonably applied the correct legal principle to the facts of Britto's case. After a careful review, I find that none of the claims pass muster. I may well have disagreed with the state courts' conclusion with respect to the ineffective assistance of counsel, in connection with forensic issues, or with respect to providing new counsel, when there is a total breakdown of the attorney-client relationship, but I cannot conclude that the state courts' decisions were "unreasonable" within the strictures of AEDPA law.

    **A.**    **Allegations of Errors by the Trial Court**

        **1.**    **Identification Statements**

Petitioner challenges the admission into evidence of the statements of the identification witness, Senter, the victim's upstairs neighbor. Senter described his pre-trial lineup identification of Britto, an identification that took place in the presence of a Massachusetts State Trooper, an Assistant District Attorney and his trial counsel. The lineup was videotaped and admitted as an exhibit. Senter also testified to his comments to the Massachusetts State Trooper while being escorted in a cruiser, after the lineup had concluded. When questioned by the officer as to how sure he was about his identification, Senter stated he was sure because he knew what it was "like to be locked up" and did not "want to identify someone who didn't do it." Britto, 433 Mass. at 609.

On appeal before the SJC and in this petition, the petitioner claims that Senter's post lineup statements were inadmissible hearsay and prejudicial error. The SJC agreed that the statement was inadmissible, but found no prejudice given the totality of the evidence against

-8-

Britto. Whether the SJC was correct or not is irrelevant. The fact is that Britto did not make a constitutional argument to them, let alone a federal constitutional one (such as a confrontation clause claim). A trial judge's evidentiary rulings cannot furnish a basis for habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A federal court may issue a writ of habeas corpus only when a conviction violates the constitution, laws, or treaties of the United States. Estelle, 502 U.S. at 67-68; 28 U.S.C. §§ 2241, 2254.

### B. Jurors' Questioning

Britto asserts that it was an abuse of discretion for the trial court to permit jurors to submit questions to witnesses. That process, the petitioner claims, deprived him of a fair trial. The issue is surely an important one, subject to considerable debate across the country, in both federal and state courts. The SJC concluded that the questioning was proper, and in any case, that there was no evidence that the questioning introduced prejudice, delay or error into the trial. Britto, 433 Mass. at 613.

In any case, all that was argued before the SJC was whether this was an arguable error of state law, which does not provide a basis for federal habeas corpus relief. Estelle, 502 U.S. at 67-68; Lewis, 497 U.S. at 780.

### C. Denial of Discharge of Counsel

Britto asserts that the SJC's holding that the denial of four motions to discharge trial counsel violated his right to counsel under the Sixth Amendment, a claim which, unlike the two above, is cognizable on federal habeas. However, in light of the SJC's analysis of the issues regarding the motions to discharge trial counsel, I cannot conclude that its decision was an unreasonable application of established Supreme Court precedent. See McCambridge v. Hall,

303 F.3d 24, 37 (1st Cir. 2002). In <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12 (1983), the Supreme Court held: "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." Consequently, "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." <u>Id.</u> (internal citations and quotations omitted).

The SJC's analysis was consistent with this body of law. It held that the "appropriate [Sixth Amendment] inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer." <u>Britto</u>, 433 Mass. at 607 (citing <u>Commonwealth v. Tuitt</u>, 393 Mass. 801, 806-07 (1985) (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 657 n.21 (1984))). The trial judge determined that "[a]ny lapse in communication between [counsel] and the defendant prior to trial was based solely on the defendant's unfounded lack of trust." <u>Britto</u>, 433 Mass. at 607-08. And it noted that, by the time of trial, the situation had repaired itself and that the defendant sat with counsel during the trial and the two "consulted frequently." <u>Id.</u> at 608. The judge also determined that defense counsel was "thoroughly prepared . . . and well organized." <u>Id.</u>

The SJC used the appropriate federal constitutional standard when it rejected the petitioner's motions. Its findings were amply supported by the record. While as a trial judge I surely would have made a different determination -- erring on the side of a more expansive view of Sixth Amendment protections when a man faces murder charges -- I cannot say that there was error cognizable in an AEDPA proceeding.

    **D.    Allegations of Error with Respect to Trial Counsel**

The legal standard that applies in this case is the framework articulated for analyzing claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984); see Williams, 529 U.S. at 390 (applying Strickland as the "clearly established federal law" that governed petitioner's ineffective assistance claim). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S. at 690; see also United States v. Hebshie, No. 02-10185, 2010 WL 4722040, at *18 (D. Mass. November 15, 2010).

The range of representation considered adequate to fit Strickland's requirements is fairly broad, broader still when viewed through the lens of AEDPA. Under AEDPA, I am supposed to defer to the state court when its decision is within the broad range of reasonable applications of the federal standard. And that deference is even more clear given the range of counsel behavior that Strickland seems to permit. In Yarborough, the Supreme Court explained: "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." 541 U.S. at 664

To be sure, as I noted in United States v. Hebshie, forensic issues pose unique challenges.[4] And there surely are instances in which the failure to test, or to hire an expert to

---

[4] The case law describes two lines of cases. In one line, the record may show counsel's entire performance fell below the constitutional minimum. See, e.g., Taylor, 529 U.S. 362 (finding counsel's performance ineffective where he failed to present substantial mitigation evidence to sentencing jury). In the other, the record may indicate that counsel, for the most part, provided adequate performance, yet he or she committed a single, critical error that renders the representation ineffective. Kimmelman v. Morrison, 477 U.S. 365, 386 (1986) (holding that counsel's "total failure to conduct pretrial discovery" constituted ineffective assistance); see also Murray v. Carrier, 477 U.S. 478, 496 (1986) ("[T]he right to effective assistance of counsel . . . may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999) (finding failure to object to untimely filing that resulted in unlawful mandatory minimum sentence

rebut the government, comprises ineffective assistance of counsel under Strickland and where a contrary holding by the state courts would be unreasonable.

But this is not one of them.

### E. Failure to Employ an Expert Witness on Forensic Pathology

In his supplemental amendment, Petitioner argues that he was denied effective assistance of counsel when his attorney failed to hire a "forensic pathologist" to examine his wounds. Am. Pet. Writ Habeas Corpus 3. While the Respondent contends that this is a new ground for the claim of ineffective assistance of counsel and, therefore, time barred, I disagree. Petitioner is clearly referring to a medical expert to examine his alleged bullet wound -- a ground reviewed by the SJC on direct appeal and mentioned in the appeal of his third amended motion for a new trail. See Britto, 433 Mass. at 606; Resp't Supplemental Answer 14.

In the consolidated opinion, the SJC noted that Britto's counsel was able to elicit favorable medical testimony from the Commonwealth's expert on cross-examination and that since Britto had previously admitted being shot on the same day as Delsie's murder, it was "difficult to imagine" how an independent medical examination would help his defense. Id. at 607. It therefore held that he was not denied effective assistance of counsel in this respect. I cannot conclude otherwise on this record.

### F. Failure to Impeach Two Government Witnesses

Included in the grounds for ineffective assistance of counsel on direct appeal (on Britto's appeal from his second motion for a new trial) was trial counsel's alleged failure to adequately

---

was ineffective assistance); Mason v. Hanks, 97 F.3d 887, 902 (7th Cir. 1996) (finding that failure to raise issue of inadmissible hearsay constituted deficient performance). Hebshie, No. 02-10185, 2010 WL 4722040, at *19 (D. Mass. November 15, 2010).

impeach two government witnesses, Zine and Holiday -- a claim that Britto also raised in both the pro se and supplemental federal habeas petitions.

With respect to Holiday,[5] Britto emphasizes trial counsel's failure to highlight the fact that Holiday had testified to the Grand Jury that she resented Delsie for cutting her out as the go-between with her drug suppliers. He also mentioned that counsel should have cross-examined Holiday about her own involvement in the robbery. Finally, Britto suggests that counsel did not address with Holiday the benefits she expected to receive from their cooperation. Am. Pet. Writ Habeas Corpus 14.

During the trial, Holiday mentioned to a victim-witness advocate that she recognized Britto as the masked man who had killed Delsie, despite not having been able to identify him previously. The prosecution sought to introduce the identification, but the trial judge denied the request. The SJC noted that if "counsel had impeached [Holiday] with evidence which linked her in a conspiracy with the defendant to rob Delsie on the day of her murder, he would have reopened the door to Holiday's failure to identify the defendant and therefore undermined the pivotal issue of the defense." Britto, 433 Mass. at 605. Thus, it held that "failure to pursue this risky line of impeachment was not manifestly unreasonable." Id. I draw the same conclusion with respect to the claim that Holiday was not examined about benefits she expected to receive from cooperation. I cannot conclude that the SJC's findings were inconsistent with AEDPA

---

[5] Though the scope of Britto's discussion of Holiday's testimony in his amended federal habeas petition may be somewhat larger than that addressed by the SJC, because of the way it was framed (failure to pursue evidence regarding Holiday's involvement as opposed to failure to impeach Holiday on the stand), it does not so alter the nature of the claim such that it would be characterized as unexhausted. See generally Vasquez v. Hillery, 474 U.S. 254 (1986) (stating that the prisoner's obligation to exhaust state remedies had not been circumvented by the District Court's review of new evidence, where that evidence did not fundamentally alter the nature of a claim previously considered by the state courts).

given the breadth of the Strickland standards and the rigor of AEDPA.

With respect to Zine, Britto claimed that his counsel had not cross examined Zine concerning the government's promise of leniency with respect to then pending prosecutions. The SJC went into considerable detail about the breadth of the cross examination that counsel did conduct, and the extent to which strategic considerations may well have played a part in counsel's failure to examine on this issue. There is no basis for AEDPA relief on this score. Britto, 433 Mass. at 603-06.

### G. Failure to Employ an Expert Witness on Identification

Petitioner argues in his supplemental amendment that he was denied effective assistance of counsel when counsel "failed to hire an eyewitness expert to counter the reliability of the witness' identifications and apprise the jury of potential racial bias." Am. Pet. Writ Habeas Corpus 8. Although trial counsel cross-examined the witnesses regarding their states of mind and drug use leading up to the murder, the Petitioner contends that the absence of an expert left the jury to rely on their own experiences of drug use. He further argues that counsel should have had an expert to testify to the reliability of identifications by white witnesses against black defendants and identifications made solely on the basis of the eyes.[6]

The claim that counsel was ineffective for failing to hire an expert to testify to the impact of drug intoxication, racial bias, and exposure solely to the eyes on the reliability of eye-witness identifications does not appear to have been raised previously on direct appeal or Britto's three motions for a new trial. As such, I cannot address it here.

### H. Failure to Employ an Expert Witness on Ballistics

---

[6] At least two of the witnesses, Zine and Holiday, only saw the gunman's eyes because he was wearing a mask at the time of the robbery.

Delsie had two guns registered in her name, one of which was ostensibly used to shoot the intruder just before her death. A witness testified that he saw the gunman outside the house after the shooting holding a firearm that resembled Delsie's. Britto's indictment for her murder was the result of an unrelated search of a residence where he had been staying. When Brockton police entered the apartment, they saw Britto toss a gun to the side, which turned out to be one of those registered to the victim. Britto told police the gun was not his and was there when he arrived. Britto, 433 Mass. at 599. At trial, the Commonwealth put forth the theory that the gun found during the raid was that used to shoot the intruder and that he had removed from Delsie's home before he fled. Trial Tr. 2:101.

Petitioner argues that it was ineffective assistance of counsel not to hire a ballistics expert and/or to challenge the firearm evidence and the Commonwealth's theory that the gun was the same one used to shoot the intruder. Am. Pet. Writ Habeas Corpus 11-13. Had he done so, the Petitioner claims, he could have undermined Commonwealth's theory and raised the possibility that the gun that Britto had in possession was the other gun registered to Delsie and not the one used in the murder.

Again, this claim does not appear to have been raised in any state proceedings, and thus cannot be considered here.

I. **Other Issues**

Petitioner's remaining claims are also without merit -- that his counsel was ineffective because he failed to maintain adequate client communication in preparing and presenting a defense, and his failure to furnish the government with reciprocal discovery which then undermined counsel's ability to impeach the government witness. The SJC's findings about the

constitutional adequacy of counsel in the representation of Britto are fully supported on this record. See Britto, 433 Mass. at 606-08.

This petition is **DISMISSED**.

**SO ORDERED.**

Date: April 23, 2011        /s/ Nancy Gertner
                            **NANCY GERTNER, U.S.D.J.**